1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

7
8
9

REBEKA RODRIGUEZ,

                              Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware Corporation dba www.ford.com, and DOES 1 through 10, inclusive,

                              Defendants.

Case No.:  3:23-cv-00598-RBM-JLB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**[Doc. 11]**

10
11
12
13
14
15
16
17
18

Plaintiff Rebeka Rodriguez ("Plaintiff"), individually and on behalf of all others similarly situated, filed a First Amended Class Action Complaint ("FAC") for violations of the California Invasion of Privacy Act ("CIPA") against Defendant Ford Motor Company ("Defendant") on April 16, 2023.  (Doc. 6.)  In her FAC, Plaintiff alleges two causes of action: (1) violations of CIPA section 631(a), *see* Cal. Pen. Code § 631(a), and (2) violations of CIPA section 632.7, *see* Cal. Pen. Code § 632.7.  (*Id.* at 7–11.)

On May 22, 2023, Defendant filed a Motion to Dismiss Plaintiff's FAC ("Motion"), which is now pending before the Court.  (Doc. 11.)  On July 10, 2023, Plaintiff filed a Response in Opposition to Defendant's Motion ("Opposition").  (Doc. 12.)  On July 17, 2023, Defendant filed a Reply in Support of their Motion ("Reply").  (Doc. 13.)

The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below,

19
20
21
22
23
24
25
26
27
28

1

Defendant's Motion is **GRANTED**.

I.    FACTUAL BACKGROUND[1]

**A.    Broad Allegations**

Plaintiff alleges that Defendant "secretly enables and allows a third-party spyware company to eavesdrop on the private conversations of everyone who communicates through the chat feature at www.ford.com (the 'Website').  The spyware company then exploits and monetizes that data by sharing it with other third parties, who use the private chat data to bombard the unsuspecting visitor with targeted marketing.  Defendant does this without [the] visitors' informed consent.  As a result, Defendant has violated the [CIPA], Cal. Penal Code § 630, *et seq.*."  (FAC at p. 2.)[2]

"Section 631(a) of California's Penal Code imposes liability upon any entity that 'by means of any machine, instrument, contrivance, or in any other manner,' (1) 'intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,' or (2) 'willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state' or (3) 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.'"  (*Id.* ¶ 30 (quoting Cal. Pen. Code § 631(a).)  "Section 632.7 of California's Penal Code imposes liability upon anyone 'who, without the consent

_____

[1] The Court's summary of Plaintiff's allegations reflects Plaintiff's factual and legal allegations in her FAC, not conclusions of fact or law by this Court.

[2] The Court cites the CM/ECF pagination unless otherwise noted.

2

of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone.'" (*Id.* ¶ 39 (quoting Cal. Pen. Code § 632.7).)

Plaintiff alleges that "CIPA prohibits both the wiretapping of and eavesdropping upon electronic communications without the consent of all parties to the communication" and that "[c]ompliance with CIPA is easy, and most website operators comply by conspicuously warning visitors that their conversations are being recorded, intercepted, and/or eavesdropped upon." (*Id.* ¶ 7.)  However, "[u]nlike most companies, Defendant ignores CIPA.  Instead, Defendant enables and allows an independent third party to eavesdrop upon and record all such conversations." (*Id.* ¶ 8.)

"Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting [an independent third party] to intercept and eavesdrop on the conversations during transmission, and then exploit the data for its own gain." (*Id.* ¶ 21.) "Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct." (*Id.* ¶¶ 22, 35.)

**B.    Specific Allegations**

Plaintiff alleges that "[i]n early 2023, while physically within California, [she] visited Defendant's Website using a smart phone [a cellular telephone with integrated computers to enable web browsing] and conducted a brief conversation with a customer service representative of Defendant through the Website chat feature related to Defendant's products offered on the Website." (*Id.* ¶¶ 4, 19.) "As such, Plaintiff's conversations with Defendant were transmitted from 'cellular radio telephones' and/or 'landline telephones' as defined by CIPA." (*Id.* ¶ 19.)  "By definition, Defendant's chat communications from its Website are transmitted to visitors by either cellular telephony or landline telephony." (*Id.* ¶ 20.)  Therefore, Plaintiff alleges that section 631(a) applies to Plaintiff's electronic

3

communications with Defendant's Website.  (*Id.* ¶ 31.)  Plaintiff "was not advised that the chat was monitored, intercepted, or recorded."  (*Id.* ¶ 4.)

Plaintiff then alleges that "Defendant has allowed a third party—LivePerson, Inc.—… to secretly intercept, exploit, and monetize the chat conversations between Defendant and visitors to its Website."  (*Id.* ¶ 10.)  "[LivePerson's] chat service is an Application Programming Interface that is 'plugged into' Defendant's Website.  The chat function runs from [LivePerson's] servers but allows for chat functionality on Defendant's Website.  In other words, [LivePerson] runs the Chat service from its own servers, but customers interact with the chat service on Defendant's Website so it appears to users that they are communicating with a company representative of Defendant."  (*Id.* ¶ 11.)  "Whenever a chat message is sent from a member of the Class to Defendant, it is first routed through the [LivePerson's] server.  This enables [LivePerson] to analyze and collect customer-support agent interactions in real time to create live transcripts of communications as they occur …. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions."  (*Id.* ¶ 12.)  Plaintiff alleges that Defendant "knows that [LivePerson], through software, captures the electronic communications of visitors to Defendant's Website …."  (*Id.* ¶ 34.)

Plaintiff alleges that "Defendant's conduct constitutes numerous independent and discreet violations of Cal[ifornia] Penal Code [section] 631(a)[.]"  (*Id.* ¶ 37.)  Plaintiff alleges that LivePerson's software embedded on Defendant's website qualifies as a "machine, instrument, contrivance or … other manner" used to engage in conduct prohibited by CIPA section 631(a).  (*Id.* ¶ 32.)  Plaintiff alleges that Defendant "aided and abetted, agreed with, employed, or conspired with [LivePerson] to wiretap and/or eavesdrop upon such conversations during transmission and in real time by voluntarily embedding the software code for [LivePerson's] software on Defendant's Website."  (*Id.* ¶ 33.)

Plaintiff also alleges that "Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7[.]"  (*Id.* ¶ 45.)  Plaintiff alleges that

4

Defendant "intentionally caused the internet communication between Plaintiff [and] Defendant's Website to be recorded." (*Id.* ¶ 33.)  Plaintiff also alleges that Defendant "aided and abetted a third party in the interception, reception, and/or intentional recordation of telephony communication in violation of section 632.7." (*Id.* ¶ 43.)  Plaintiff alleges that "Defendant's communications from the chat feature on its Website are transmitted via telephony subject to the mandates and prohibitions of section 632.7." (*Id.* ¶ 41.)  Plaintiff alleges that "Defendant recorded telephony communications without the consent of all parties to the communication in violation of section 632.7." (*Id.* ¶ 42.)

"[LivePerson's] chat software is 'integrated' with Meta subsidiaries like Facebook and WhatsApp.  This Integration allows [LivePerson] to share data with Meta and its subsidiaries, and thus operate as a unified system." (*Id.* ¶ 14.)  "First, Meta identifies 'user interests' by monitoring a collection of 'offsite' user activity, such as the private chat communications between Defendant and visitors to its Website by 'integrating' with [LivePerson's] software.  Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests.  Third and finally, after harvesting the chat transcripts for valuable data, Meta's brands like Facebook and WhatsApp bombard the unsuspecting Website visitors with targeted advertising." (*Id.* ¶ 15 (emphasis removed).)  In support of these allegations, Plaintiff cites a Bloomberg article regarding Facebook's acquisition of a company called Kustomer. (*Id.* ¶ 14.)  Plaintiff also cites the customer service page from Kustomer's website. (*Id.* ¶ 16.)

"[A]ll of the schemers—Defendant, [LivePerson], and Meta—all profit from secretly exploiting the private chat data through targeted social media advertising because 'Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer.  The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand.  Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.'" (*Id.* (emphasis removed).)  "[LivePerson's] exploitation,

monetization, use of, and interaction with the data it gathers through the chat feature in real time makes it more than a mere 'extension' of Defendant."  (*Id.* ¶ 17.)

## II.   <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.    DISCUSSION

**A.    Judicial Notice**

**1.    Defendant's Request for Judicial Notice**

Defendant asks the Court to take judicial notice of three district court opinions pursuant to Federal Rule of Evidence 201: [1] *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023), [2] *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023); and [3] *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023).  (Doc. 11-2 at 1–2.)  Plaintiff did not respond to Defendant's request.

Federal Rule of Evidence 201 "governs judicial notice of an adjudicative fact only, not a legislative fact."  Fed. R. Evid. 201(a).  "It is inappropriate to request that the Court take judicial notice of legal authority, as judicial notice is reserved for adjudicative facts only."  *Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal. Aug. 15, 2013) (quotation marks, brackets, and citations omitted); *see also Kilgroe v. APL Marine Servs., Ltd*, No. CV 05-7314 AHM (SSX), 2006 WL 8446867, at *3 (C.D. Cal. Sept. 26, 2006) (finding that a case opinion is not an adjudicative fact).  Such a request is unnecessary because "[t]he law is the law regardless of whether the Court takes judicial notice of it."  *Harner v. USAA Gen. Indem. Co.*, No. 18cv01993-LL-MDD, 2022 WL 1271136, at *3 (S.D. Cal. Apr. 28, 2022).

Accordingly, the Court **DENIES** Defendant's request for judicial notice.  The Court is familiar with the law relevant to the present case and will apply it as appropriate.

**2.    Plaintiff's Request for Judicial Notice**

Plaintiff requests that the Court take judicial notice of "Senate Committee on Judiciary, Bill Analysis of Assembly Bill No. 2465 (1991-1992 Regular Session), As Amended June 1, 1992 (Date of hearing: June 9, 1992)" as evidence that the legislature intended CIPA section 632.7 to apply to the internet chat communications at issue in this case.  (Doc. 12-1 at 2.)  Defendant did not respond to Plaintiff's request.

"[A] court *may* properly take judicial notice of legislative history[.]"  *Stone v. Sysco Corp.*, No. 16-CV-01145-DAD-JLT, 2016 WL 6582598, at *4 (E.D. Cal. Nov. 7, 2016)

7

(emphasis added); *see also Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2009 WL 2407404, at *2 (E.D. Cal. Aug. 4, 2009) (taking judicial notice of two assembly bills). However, "[j]udicial notice of legislative facts … is unnecessary." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citing Fed. R. Evid. 201(a), advisory comm. note to 1972 amendments); *see also Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 811 F. App'x 421, 422 (9th Cir. 2020) ("Since the associated exhibits contain only legislative facts, we are free to consult them to the extent we find them useful.").[3]

As set forth below (*see* Section III.C), the Court need not examine the legislative history of CIPA section 632.7.  Federal district courts in California have overwhelmingly held that CIPA section 632.7 only applies to communication involving telephones, not the internet chat communications at issue here.  *See e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, Case No. 2:22-cv-06177-MEMF-SK, 2023 WL 5266033, at *9–10 (C.D. Cal. Aug. 14, 2023).

Accordingly, the Court need not consider the legislative history of CIPA section 632.7 in rendering its decision, and Plaintiff's request for judicial notice is **_DENIED_**.[4]

---

[3] "Adjudicative facts are simply the facts of the particular case.  Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body."  Fed. R. Evid. 201, Note to Subdivision (a).

[4] Plaintiff also filed with the Court three notices of supplemental authority, which are not subject to judicial notice under Federal Rule of Evidence 201.  (*See* Docs. 15–17.)  In the first, Plaintiff asks the Court to take notice of a minute order issued by the Los Angeles County Superior Court on August 11, 2023 in *Licea v. Jockey International, Inc.* (Case No. 23STCV02906).  (Doc. 15 at 2.)  In the second, Plaintiff asks the Court to take notice of "a recent federal district court decision issued in *Licea v. Genesco, Inc.*, Southern District of California Case No. 3:22-CV-1567-JO-KSC…."  (Doc. 16 at 2.)  In the third, Plaintiff asks the court to take notice of the same federal decision identified in Plaintiff's second notice, as well as the related hearing transcript.  (Doc. 17 at 2.)  Plaintiff also asks the Court take notice of two minute orders filed by the Los Angeles County Superior Court in *Licea v. Brooklyn Bedding* (Case No. 23STCV04925) and *Esparza v. Urban Outfitters* (Case No.

**B.     CIPA Section 631(a) (First Cause of Action)**

California Penal Code section 631(a) states, "any person…

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;

> [3] or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> [4] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,

is punishable by a fine…."

"The California Supreme Court has explained that this lengthy provision contains three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' [i.e., eavesdropping] and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978)) (citing *In re Google Inc.*, Case No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013)). In

23STCV08874). (*Id.*) Nevertheless, the Court has received and reviewed the supplemental authority and will apply the law to the present case as appropriate.

addition, "Section 631(a) … contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a).)

In its Motion, Defendant explains, "it is not clear whether Plaintiff's FAC alleges that Defendant has unlawfully engaged in all the aforementioned distinct patterns of conduct or that Defendant has only engaged in unlawful conduct under Section 631(a)'s fourth basis for liability (an aiding and abetting theory)." (Doc. 11-1 at 8–9.) Defendant then argues that direct parties to a communication, like Defendant, are exempt from direct liability under the first three clauses of CIPA section 631(a). (*Id.* at 9–10.) Defendant concludes that "the only possible basis for liability under Section 631(a) is under an aiding and abetting theory, i.e., the fourth clause of Section 631(a)." (*Id.* at 10.)

In her Opposition, Plaintiff responds that she "carefully edited the FAC to remove all references to Defendant's direct liability under section 631(a) of [CIPA] (as opposed to an aiding and abetting theory of liability) …." (Doc. 12 at 14.) Plaintiff concludes that "there is no need for the Court to address Defendant's 'party exemption' argument …" (*Id.*)

The Court agrees with Defendant that Plaintiff's allegations regarding liability are unclear because Plaintiff alleges that "Defendant's conduct constitutes *numerous independent and discreet violations*" of CIPA section 631(a) and 632.7. (FAC ¶¶ 37, 45 (emphasis added).) Nevertheless, the Court construes Plaintiff's argument in her Opposition as declining to pursue a claim against Defendant for direct liability under the first three clauses of CIPA section 631(a) and **DISMISSES** any such claim against Defendant **WITH PREJUDICE** because amendment would be futile.[5] *See Cook, Perkiss & Liehe*, 911 F.2d at 247.

---

[5] Defendant cannot be held directly liable under the first three clauses of section 631(a) because a party to a communication cannot "wiretap" or "eavesdrop" on its own

1   The only claim that remains is Plaintiff's claim under clause four of section 631(a)

2   for aiding and abetting.  "To state a claim under this clause, Plaintiff must allege

3   [LivePerson] has violated one of the first three clauses of section 631(a), and that

4   Defendant aided, agreed with, employed, or conspired with that person or entity to commit

5   those unlawful acts." *Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102 DMS(KSC),

6   2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024).

7   Defendant argues that Plaintiff's aiding and abetting claim under the fourth clause

8   fails because "Plaintiff has not alleged facts to establish that LivePerson wiretapped or

9   eavesdropped in violation of Section 631(a)" and "Plaintiff alleges no facts regarding

10   [Defendant]'s knowledge or intent."  (Doc. 11-1 at 10.)  The Court addresses each of

11   Defendant's argument below.[6]

12   **1.   Clause One—Intentional Wiretapping**

13   As stated above, the first clause of section 631(a) provides that it is punishable by

14   fine or imprisonment for "any person who by means of any *machine, instrument, or*

15   *contrivance, or in any other manner*, intentionally taps, or makes any unauthorized

16   connection, whether physically, electrically, acoustically, inductively, or otherwise, *with*

17   *any telegraph or telephone wire, line, cable, or instrument*, including the wire, line, cable,

18   or instrument of any internal telephonic communication system …."  Cal. Pen. Code

19   § 631(a) (emphasis added).

—————————————

communications.  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("[CIPA] contain[s] an exemption from liability for a person who is a 'party' to the communication …."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (1975) ("[O]nly a third party can listen secretly to a private conversation."); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

[6] Although Plaintiff contends that her FAC plausibly alleges that LivePerson violated the first, second, and third clauses of section 631(a) (*see* Doc. 12 at 14), Plaintiff does not clearly address each clause.  The Court will attempt to address each of Plaintiff's arguments under the appropriate clause.

### a) Machine, Instrument, or Contrivance

Defendant argues that "Plaintiff's FAC does not include any facts to show how the software Defendant allegedly uses on its website is a 'machine,' 'instrument,' or 'contrivance,' and thus Plaintiff's allegations are insufficient." (Doc. 11-1 at 11 (citing *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015)).) Plaintiff responds that her FAC sufficiently alleges that Defendant used a "machine, instrument, or contrivance" to make an unauthorized connection because the first clause is not limited to wiretapping via a "machine, instrument, or contrivance" only. (Doc. 12 at 19.) Plaintiff asserts that wiretapping can occur "in any other ma[nn]er" as well. (*Id.* at 20.) Plaintiff also argues that a computer qualifies as a machine within the meaning of section 631(a). (*Id.* (citing *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 937).)

In *In re Facebook Internet Tracking Litigation*, the plaintiffs alleged that Facebook tracked and stored their post-logout internet usage using small text files—or "cookies"—which Facebook had embedded in their computers' browsers. 140 F. Supp. 3d at 925. The plaintiffs asserted a claim for violations of CIPA section 631(a). *Id.* at 929, 936–37. The district court found that the plaintiffs had "not pled facts to show how Facebook used a 'machine, instrument, or contrivance' to obtain the contents of communications." *Id.* at 937. The court reasoned that "[w]hile it is undeniable that a computer may qualify as a 'machine,' Plaintiffs must complete the scenario by explain[ing] how Facebook's cookies fall into one of the three categories enumerated in the statute." *Id.* ("[I]f a cookie is truly a 'contrivance' as [the] [p]laintiffs contend, a word they define as a 'device, especially a mechanical one' or 'plan or scheme,' [the] [p]laintiffs must include facts in their pleading to show why it is so."). The parties have not identified additional cases addressing this narrow issue, and neither has the Court.

After careful consideration, the Court declines to adopt the district court's reasoning in *In re Facebook Tracking Litigation*. In rendering its decision, the district court did not cite to any case law or other authority supporting its position. Further, the district court

did not acknowledge or address the statutory language "in any other manner," which seems to expand the statutory scope beyond machines, instruments, and contrivances.  Finally, the district court admits that "it is undeniable that a computer may qualify as a 'machine[.]'"  *Id.*  It is not apparent to this Court why the statutory language would "undeniably" apply to a computer but not the software that a computer entails.

Here, Plaintiff alleges that LivePerson's chat service, an Application Programming Interface, is plugged into Defendant's Website but runs from LivePerson's servers, allowing LivePerson to analyze and collect customer-support agent interactions in real time to create live transcripts of communications as they occur.  (*See* FAC ¶¶ 11–12.)  Plaintiff then alleges that LivePerson's "software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a 'machine, instrument, contrivance, or … other manner' used to engage in the prohibited conduct alleged herein." (*Id.* ¶ 30.)  Thus, the Court finds that Plaintiff has adequately alleged that Defendant made "an unauthorized connection" "by means of any machine, instrument or contrivance, or in any other manner[.]"

### b)    Telegraph or Telephone Wire, Line, Cable, or Instrument

Defendant also argues that "[it] did not aid or abet 'wiretapping' under the first clause of Section 631(a) because the first clause does not apply to communications made through computer functions of a smart phone" and because "[Plaintiff] cannot demonstrate that she communicated with Defendant's website and/or LivePerson's software via telephone, telegraph, wire, line, cable or instrument."  (Doc. 11-1 at 10–11.)  Plaintiff responds that "[t]he Ninth Circuit has consistently held that cellular phone communications are wire communications for the purposes of the federal Wiretap Act" and that cases analyzing the federal Wiretap Act inform cases analyzing the CIPA. (Doc. 12 at 20–21.)

"Under California law, statutory interpretation 'begins with the words themselves, giving them 'their plain and commonsense meaning,' because the words of a legal text 'generally provide the most reliable indicator of [legislative] intent.'"  *Cody v. Ring LLC*, Case No. 23-cv-00562-AMO, 2024 WL 735667, at *3 (N.D. Cal. Feb. 22, 2024) (quoting

*Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020)).  "The plain terms of Section 631(a)'s first clause prohibit intentionally eavesdropping 'with any *telegraph or telephone wire*' or with an 'instrument of any internal *telephone* communication system.'"  *Id.* (quoting Cal. Penal Code § 631(a) (emphasis added)).  In other words, "[c]lause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet…." *Id.*; *see also UAG Escondido A1 Inc.*, 2024 WL 559241, at *2 ("[C]lause one does not apply to internet connections."); *Esparza v. Gen Digital Inc.*, Case No. CV 23-8223-KK-AGRx, 2024 WL 655986, at *3 (C.D. Cal. Jan. 16, 2024) ("[B]ecause Section 631(a) concerns telephonic wiretapping, it does not apply to the context of the internet[.]") (internal quotation marks and citation omitted); *Heiting v. Taro Pharms. USA, Inc.*, Case No. 2:23-cv-08002-SPG-E, 2023 WL 9319049, at *2 (C.D. Cal. Dec. 26, 2023) ("[B]ecause Plaintiff alleges interception of a chat communication on Defendant's website, instead of over the phone, Plaintiff cannot state a claim under the first clause of section 631(a)."); *James v. Allstate Ins. Co.*, Case No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Because Section 631(a)'s plain text does not prohibit the non-telephone wire, line, cable or instrument conduct described here, Plaintiff does not state a claim under clause one."); *Valenzuela v. Super Bright LEDs Inc.*, Case No. ED CV-2301148 JAK (SPx), 2023 WL 8424472, at *4 (C.D. Cal. Nov. 27, 2023) ("[T]he first clause of § 631 does not cover Internet communications *even when the Internet is accessed using a telephone*.") (emphasis added).  Instead, "courts have applied the *second clause* to internet communications."  *Ring LLC*, 2024 WL 735667, at *3 (citing *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) and *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181, at *3 (N.D. Cal. May 24, 2023)) (emphasis added).

Here, Plaintiff alleges that she visited Defendant's website using a smart phone, a cellular telephone with integrated computers to enable web browsing.  (FAC ¶¶ 4, 19.) Plaintiff cannot circumvent the fact that clause one does not apply to the internet by using the internet function of a smart phone to access Defendant's website.  *See Mastel v.*

14

*Miniclip SA*, 549 F. Supp. 3d at 1135 ("Although iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers."); *see also Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d at 1075 ("[T]he first clause of Section 631(a) does not apply to communications made through the computer functions of a smart phone."). Thus, the Court finds that Plaintiff has not adequately alleged that LivePerson violated the first clause of section 631(a), and the Court proceeds to clause two, which can apply to internet communications. *Ring LLC*, 2024 WL 735667, at *3.

### 2. Clause Two—Eavesdropping

The second clause of section 631(a) provides that it is punishable by fine or imprisonment for "any person … who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Pen. Code § 631(a).

Defendant argues that "Plaintiff fails to allege that LivePerson is more than an extension of the website operator, and thus falls under the party exemption as a result." (Doc. 11-1 at 12–14.) Specifically, Defendant argues that LivePerson is merely an "extension" of Defendant because LivePerson does not use Defendant's customers' information beyond supplying it back to Defendant. (*Id.* at 13–14 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (2021).) Defendant also argues that "Plaintiff's allegations that LivePerson exploits and monetizes the chat conversations between Defendant and visitors to its website are conclusory, unsupported by any of the facts alleged in the complaint, and are insufficient to state a claim for aiding and abetting eavesdropping." (*Id.* at 15.)

Plaintiff, on the other hand, argues that "[t]he surreptitious collection of user data to create targeted advertising has been recognized as actionable under [CIPA]." (Doc. 12 at 15.) Plaintiff also argues that LivePerson is not an "extension" of Defendant and, therefore,

not subject to the party exemption to eavesdropping.  (*Id.* at 15–19 (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)).)[7, 8]

### a)   The Party Exception

A party to a communication cannot "eavesdrop" on its own communications.  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 ("[CIPA] contain[s] an exemption from liability for a person who is a 'party' to the communication….."); *Rogers*, 52 Cal. App. 3d at 898–99 ("[O]nly a third party can listen secretly to a private conversation."); *Warden*, 99 Cal. App. 3d at 811 ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").  Thus, the question here is whether LivePerson is subject to the "party exemption," which "must be considered in the technical context of this case."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607.

"Two seminal cases frame the recent jurisprudence on section 631: *Ribas v. Clark*, 38 Cal. 3d 355 (1985) ["*Ribas*"] and *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) ["*Rogers*"]."  *Heiting*, 2023 WL 9319049, at *2; *see also Balletto v. Am. Honda Motor Co*., Case No. 23-cv-01017-JSW, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *4 (same); *Yockey v. Salesforce, Inc.*, Case No. 22-cv-09067-JST, 2023 WL 5519323, at *3 (N.D. Cal. Aug. 25, 2023) (same);

---

[7] Plaintiff also argues that she has adequately pled facts supporting the "in-transit" requirement under clause two (*see* Doc. 12 at 21–25); however, as Defendant correctly notes in its Reply (*see* Doc. 13 at 10, n.1), this issue was not raised in Defendant's Motion. Therefore, the Court need not address it.

[8] Defendant's Reply reiterates its argument that "the Court must find that [] Plaintiff has alleged facts suggesting that the third-party recorded Defendant's customer's information for some use beyond simply supplying the information back to Defendant [because] [o]therwise[] the third party is merely acting as an extension of Defendant and [is] subject to the party exception."  (Doc. 13 at 8.)  Defendant adds that "Plaintiff asks this Court to adopt an absurd legal theory that would criminalize the activity of thousands of companies that choose to employ third-party software companies to provide routine data services." (*Id.* at 10.)

3:23-cv-00598-RBM-JLB

*Garcia v. Yeti Coolers*, LLC, Case No. 2:23-cv-02643-RGK-RAO, 2023 WL 5736006, at *2 (C.D. Cal. Sept. 5, 2023) (same).

In *Rogers*, "[Rogers] sought damages [under section 631] from the City of San Jose and from Robert Ulrich because Ulrich, a city employee, had tape recorded, and allowed other persons to hear, portions of a telephone conversation between Rogers and Ulrich." 52 Cal. App. at 894. The *Rogers* court explained, "[t]he question is whether the statute covers the recording of a conversation made by a participant rather than by a third party." *Id.* at 898. In discussing the second clause of section 631(a), the court found that "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Id.* The court reasoned that "Penal Code section 630 … speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included. … It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 898–99.

Ten years later, in *Ribas*:

> [the plaintiff] and his wife began divorce proceedings that ultimately resulted in a court-approved property settlement agreement. … After the final judgment of dissolution, the wife consulted an attorney about the tax consequences of the settlement. When informed that the agreement had allegedly adverse implications, she advised [the] plaintiff she had retained the attorney. [The] [p]laintiff immediately telephoned the lawyer and a heated exchange ensued. About an hour later, the wife visited the place of business of [the defendant] and requested to use the telephone to call her husband. She also asked [the] defendant to listen on an extension telephone, and [the] defendant obliged.

38 Cal. 3d at 358. "[The] plaintiff subsequently filed [an] action against [the defendant] seeking damages for violations of criminal statutes prohibiting various forms of eavesdropping (Pen. Code, §§ 631, subd. (a), and 637)[.]" *Id.* The *Ribas* court held that "a textual analysis of section 631, the declaration of legislative intent accompanying its enactment, and the various judicial and scholarly authorities addressing the issue leave us

no doubt that one of the Privacy Act's objectives was to curb the type of conduct alleged here." *Id.* at 361.  The *Ribas* court reasoned that "[s]ection 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Id.* at 359.  The *Ribas* court also reasoned that "[w]hile one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360–361.  Thus, "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361.

"In the wake of these decisions, courts are asked to determine whether a third party who intercepts a communication is 'more akin to the tape recorder in *Rogers*...or the friend in *Ribas*.'"  *Heiting*, 2023 WL 9319049, at *3 (quoting *Javier*, 649 F. Supp. 3d at 898) (citing *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021)). "Despite widespread agreement among courts in this Circuit as to the nature of [this] inquiry, courts have split on how the party exception applies in the context of third-party software, as well as how stringently pleading standards should be applied." *Id.* at *4; *see also Javier*, 649 F. Supp. 3d at 898 ("[Plaintiff's] counsel has brought many similar cases in this Circuit, with two general avenues of decision."); *UAG Escondido A1 Inc.*, 2024 WL 559241, at *4 ("District courts in California are split on whether this exemption extends to third parties, particularly, third party software providers.").

"The [first] set of cases, led by ... *Graham v. Noom*, holds that software vendors like ActiveProspect are 'extension[s]' of the websites that employ them, and thus not third parties within the meaning of the statute." *Javier*, 649 F. Supp. 3d at 899 (citing *Graham v. Noom*, 533 F. Supp. 3d at 832 ("*Graham*")). "The [second] set of cases holds that software providers ... are third parties within the meaning of Section 631 ...." *Id.*

In *Graham*, a website used a software to record what visitors were doing on the website, such as their keystrokes, mouse clicks, and page scrolling, so that it could see how

visitors were using its website. 533 F. Supp. 3d at 827–28. The website used the software's code to capture the data so that they could then review the data. *Id.* at 28. The data was stored in a cloud on the software company's servers. *Id.* Through a function called "session replay," the website could see a "playback" of any visitor's session. *Id.* In determining whether the plaintiffs had adequately stated a claim for eavesdropping, the district court noted that "[o]nly a third party can listen to a conversation secretly" and that "a party to a communication can record it (and is not eavesdropping when it does)." *Id.* at 831 (citations omitted). The district court then determined that the software company was "a vendor that provides a software service that captures its clients' data, hosts it on [the software company's] servers, and allows the clients to analyze their data." *Id.* at 832. The district court found that, absent allegations that the software company aggregated the data for resale or intercepted and used the data for itself, the software company, as a service provider, was merely an extension of the website and not a third-party eavesdropper. *Id.* at 832–33. The court reasoned that the software was merely a tool that allowed the website to record and analyze its own data. *Id.* at 832. In other words, the district court found that the software provider was more akin to the tape recorder in *Rogers*. *Id.*

Numerous district courts have applied the reasoning set forth in *Graham*, which hinges on the use (or lack thereof) of the data by the software provider. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("[the] [p]laintiff must provide facts suggesting that [the software companies] are recording [the] [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [the] [d]efendant."); *Hot Topic, Inc.*, 656 F. Supp. at 1066–68 ("As in *Graham* … Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper.'"); *Cinmar, LLC*, 659 F. Supp. 3d at 1109 ("Defendant is entitled to the party exemption applied to the second clause of section 631(a), as Plaintiffs fail to plead that the unnamed third party acted sufficiently independent from Defendant as to constitute an unannounced auditor under

California law."); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *4 (N.D. Cal. Dec. 22, 2022) ("[The software company] is not liable for wiretapping under Section 631(a) for providing a software tool, and the fact that [the website] used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping."); *Licea v. Vitacost.com, Inc.*, Case No. 22-CV-1854-RSH-WVG, 2023 WL 5086893, at *4 (S.D. Cal. July 24, 2023) ("This Court agrees with those decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).").

The second line of cases have held that there are two problems with the reading of section 631(a) in *Graham*. *See e.g.*, *Javier*, 649 F. Supp. 3d at 900. "The first is that it interprets the second clause of the statute—'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit'—based on the intentions and usage of the prospective third party." *Id.* (quoting Cal. Penal Code § 631(a)). "But the third clause of the statute already penalizes 'use'—'us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.'" *Id.* (quoting same). "Thus, reading a use requirement into the second clause would add requirements that are not present (and swallow the third clause in the process)." *Id.*; *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) ("Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception …."); *UAG Escondido A1 Inc.*, 2024 WL 559241, at *4 (adopting the reasoning in *Javier*); *D'Angelo v. Penny OpCo, LLC*, Case No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *7 (S.D. Cal. Oct. 24, 2023) ("This Court finds the reasoning in *Javier* persuasive. A use requirement is more appropriate in a Clause Three, not Clause Two, analysis."); *Balletto*, 2023 WL 7026931 at

*2 (finding the reasoning in *Javier* persuasive); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("Importing a 'use' element into the second prong would also leave the second prong superfluous.").

"The second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*[.]" *Javier*, 649 F. Supp. 3d at 900. "The *Ribas* Court did not consider the wife's friend's intentions or the use to which they put the information [he] obtained. Instead, it emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call, when Section 631 concerns 'the right to control the nature and extent of the firsthand dissemination of [their] statements.'" *Javier*, 649 F. Supp. 3d 891 at 900 (citing *Ribas*, 38 Cal. 3d at 360–61); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("*Javier* is also correct that *Ribas* … did not rely on the listener's intentions or state of mind in determining whether the listener was a third party to the conversation."); *UAG Escondido A1 Inc.*, 2024 WL 559241, at *4 (adopting the reasoning in *Javier*); *Balletto*, 2023 WL 7026931 at *2 (finding the reasoning in *Javier* persuasive); *Yockey*, 2023 WL 5519323, at *5 ("The Court agrees with the *Javier* court that *Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant.").

However, the *Javier* court added that "[t]here are only two other grounds upon which to conclude that [the software company] is not an 'unannounced second auditor' of the interaction between [the plaintiff] and [the website]: (1) If [the software company] does not have the *capability* to use its record of the interaction for any other purpose …; or (2) the ubiquity of services like [the software company] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the website]." *Id.* (citing same) (emphasis added). While several district courts have addressed the first ground—capability—none have addressed the second ground—ubiquity. *See Hazel v. Prudential Fin., Inc.*, Case No. 22-cv-07465-CRB, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) ("[T]he concern is not on whose behalf the recording is undertaken, but

21

whether the recorder is *capable* of using the recording for other ends.") (emphasis added); *Yockey*, 2023 WL 5519323, at *5 ("[T]he inquiry turns on…whether the third party has the *capability* to use its record of the interaction for any other purpose.") (quotation marks and citation omitted) (emphasis added); *Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) ("[T]his distinction turns on the question of whether the third party has the *capability* to use its record of the interaction for any other purpose.") (quotation marks and citations omitted) (emphasis added).[9]

The Court has also identified a third line of cases deciding that the critical question of whether a particular software is akin to the tape recorder in *Rogers* or the eavesdropper in *Ribas* is a question of fact to be decided after discovery into the technical context of the case.  *See Kauffman v. Papa John's Int'l, Inc.*, Case No. 22-cv-1492-L-MSB, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether [the software provider] acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the … technical context of the case.") (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607); *see also Yoon*, 549 F. Supp. 3d at 1081 ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder … or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of [the software].); *Tanner v. Acushnet Co.*, Case No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023) ("The ultimate determination on this question is left for another day.") (citation omitted); *Yeti Coolers, LLC*, 2023 WL 5736006, at *4 ("But the question of whether [the software] is more similar to a tape recorder or an eavesdropper is a question of fact best resolved by a jury."); *Augustine v. Lenovo* (United States), Inc., Case No. 22-CV-2027-L-AHG, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) ("Once again the Court is faced with factual disputes not ripe for determination at this juncture.

---

[9] Because subsequent district courts and the parties have not addressed the "ubiquity of services" ground, the Court sees no reason to address it here.

The allegation that [the software company's] actions go beyond the ordinary function of a tape recorder is sufficient for Plaintiff's claim to survive Defendant's pleading challenge."); *Gutierrez v. Converse Inc.*, Case No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *3 (C.D. Cal. Oct. 27, 2023) ("[W]hether a party is acting like a third-party eavesdropper or merely providing a tool is generally a question of fact.").

The question now before the Court is whether to follow the reasoning in *Graham* or *Javier*, or decide that the issue is a "question of fact" to be decided at a later date. After careful consideration, the Court finds the reasoning in *Javier* is persuasive. The Court agrees that importing a "use" requirement into clause two would render clause three superfluous. The Court also agrees that the California Supreme Court in *Ribas* did not instruct subsequent courts to consider the intentions of the third-party eavesdroppers when making their decisions. Thus, applying *Javier*, the question now is whether Plaintiff has adequately alleged that LivePerson has the "capability" to use the chat data for its own purposes or benefit. *See Balletto*, 2023 WL 7026931 at *2 ("The Court finds [*Javier's*] reasoning persuasive and asks whether [the plaintiff] has alleged [the software company] has the capability to use the information it gained for any other purpose."); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *6 ("Even courts that accepted *Javier* have rejected the argument that software without the capability simultaneously to disseminate customer data can be a form of eavesdropping.").

Here, Plaintiff alleges that "[LivePerson's] chat service is an Application Programming Interface that is 'plugged into' Defendant's Website" (FAC ¶ 11) and that the chat messages "are first routed through the [LivePerson's] server[,]" enabling "[LivePerson] to analyze and collect customer-support agent interactions in real time to create live transcripts of communications as they occur …" (*Id.* ¶ 12). Plaintiff then alleges that "[LivePerson's] chat software is 'integrated' with Meta subsidiaries like Facebook and WhatsApp[,]" which "allows [LivePerson] to share data with Meta and its subsidiaries…." (*Id.* ¶ 14.) "Meta identifies 'user interests' by monitoring … the private chat communications between Defendant and visitors to its Website by 'integrating' with

23

[LivePerson's] software.  Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests.  Third … Facebook and WhatsApp bombard the unsuspecting Website visitors with targeted advertising." (*Id.* ¶ 15.)  In supporting of these allegations, Plaintiff cites a Bloomberg article regarding a company called Kustomer.  (*Id.* ¶ 14.)  Plaintiff also cites the customer service page from Kustomer's website.  (*Id.* ¶ 16.)

Some district courts have found similar allegations sufficient to state a claim for a violation of clause two, *see e.g., UAG Escondido A1 Inc.*, 2024 WL 559241, at *5–6, while other district courts have found similar allegations insufficient to state a claim under clause two, *see e.g., Balletto*, 2023 WL 7026931 at *2; *Super Bright LEDs Inc.*, 2023 WL 8424472, at *8; *Yockey*, 2023 WL 5519323, at *5; *Swarts*, 2023 WL 5615453, at *7.  The Court agrees with the latter set of cases and finds that Plaintiff has not adequately alleged that LivePerson has the capability of using the chat data for its own purposes and benefit.

As pled, Plaintiff's first allegation—that her chats are routed through the LivePerson's server allowing LivePerson to collect the chat data—only supports the inference that the LivePerson receives and stores these communications for the benefit of its client, Defendant.  *See Yockey*, 2023 WL 5519323, at *5 (finding that similar allegations "do not support the inference that [the software company] has the capability to use these communications for any purpose other than furnishing them to [its client].  [The chat], as alleged, is therefore more akin to the tape recorder in *Rogers*, and [the plaintiff] have thus failed to state a claim pursuant to Section 631.").  Further, Plaintiff's second allegation—that LivePerson is "integrated" with Meta—is conclusory, unsupported, and insufficient.  *See Super Bright LEDs Inc.*, 2023 WL 8424472, at *8.  In support of this allegation, Plaintiff cites an article regarding Facebook's acquisition of a company called Kustomer, not LivePerson.  (FAC ¶ 14.)  Plaintiff also cites Kustomer's website, which advertises a customer service chat software.  (*Id.* ¶ 16.)  While Kustomer may be a customer service chat software "integrated" with Meta, Plaintiff has not alleged any facts or cited any authority supporting her conclusory allegation that LivePerson is integrated with Meta.

Based on the foregoing, the Court finds that Plaintiff has failed to adequately allege that LivePerson violated clause two of CIPA section 631(a).  The Court now turns to clause three.

### 3.      Clause 3—Use

Plaintiff does not argue that LivePerson is liable for a violation of clause three of section 631(a), likely because a finding of a violation under clause three is contingent upon a finding of a violation of either clause one or two.  *See Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023) ("A finding of a violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or second clause of § 631(a).") (citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue ... was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.")).  Thus, any claim that LivePerson violated clause three also fails.  *Id.*

### 4.      Clause Four—Knowledge and Intent

Section 631(a), clause four, imposes liability on any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in clauses one through three.  Cal. Penal Code § 631(a).

Defendant argues that "Plaintiff fails to allege that Defendant had the requisite knowledge or intent to support a claim for aiding and abetting."  (Doc. 11-1 at 15–16.) Specifically, Defendant argues that "Plaintiff's allegation that Defendant has knowledge that LivePerson captures the electronic communications of visitors to its website is not enough to support a claim for aiding and abetting" and that "Plaintiff must allege that Defendant had knowledge that LivePerson intended to independently use chat transcripts between Defendant and its website visitors in violation of CIPA."  (*Id.* at 16.)

Plaintiff responds that "the Court can infer Defendant's knowledge based on the fact that LivePerson … engaged in behavior that constitutes wiretapping and eavesdropping

3:23-cv-00598-RBM-JLB

that is actionable under section 631(a) of the California Penal Code, which Defendant provided substantial assistance to [LivePerson] by deliberately … embedding [LivePerson's] software code into the code for Defendant's Website…." (Doc. 12 at 26.) Plaintiff does not cite any authority for this position. Plaintiff also responds that "a person can aid and abet the commission of a crime merely by having the intent to encourage the commission of the act, as opposed to the crime." (*Id.* at 26–27 (citing California Jury Instructions—Criminal 3.01).)[10]

Neither party has cited any cases addressing the scienter requirement for aiding and abetting claims under section 631(a), clause four. In a similar case, the district court in *UAG Escondido A1 Inc.* applied the common law definition of aiding and abetting, which provides that "a person may be held liable as an aider and abettor if they: (a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." 2024 WL 559241, at *6 (quotation marks and citations omitted); *see also Heiting*, 2023 WL 9319049, at *6 (finding that the complaint did not allege facts demonstrating the defendant acted with the requisite knowledge or intent to aid and abet). The *UAG Escondido A1 Inc.* court reasoned that, in the absence of a statutory definition for aiding and abetting, prior courts have applied the common law definition of aiding and abetting. 2024 WL 559241, at *6 (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996) (applying common-law civil aiding-

---

[10] In its Reply, Defendant restates that Plaintiff "does not allege that Ford had any knowledge of the conclusory conspiracy theory between LivePerson and Meta …." (Doc. 13 at 11.) Defendant also contends that Plaintiff misinterprets the California Criminal Jury Instruction 3.01, which states, "[a] person aids and abets the [commission] [or] [attempted commission] of a crime when he or she[,]," among other things, has "knowledge of the unlawful purpose of the perpetrator." (*Id.* (citing California Jury Instructions—Criminal 3.01).)

abetting principles where California's Fair Employment and Housing Act allowed for civil aiding-abetting liability but provided no statutory standard) and *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483–85 (2023) (concluding the common-law tradition supplies the proper legal framework for civil aiding and abetting liability where a federal statute imposes civil liability upon a person who aids and abets but does not define the term aids and abets) (quotation marks and citation omitted)). The Court finds this reasoning persuasive.

Here, Plaintiff asserts facts to support the substantial assistance prong of a common law aiding and abetting claim by alleging that Defendant plugged LivePerson's Application Programming Interface into its website. (*See* FAC ¶ 11.) However, Plaintiff has not alleged that Defendants knew LivePerson's conduct constituted a breach of some duty. While Defendant may have known that LivePerson "captures the electronic communications of visitors to Defendant's Website" (*see id.* ¶ 34), Plaintiff does not allege that Defendant knew that LivePerson was using the chat data beyond storing it for Defendant or that LivePerson was distributing the chat data to Meta. Further, Plaintiff's contention that "the Court can infer Defendant's knowledge based on the fact that LivePerson … engaged in behavior that constitutes wiretapping and eavesdropping" is not persuasive because, at this stage, there has been no finding that LivePerson engaged in wiretapping or eavesdropping. *See UAG Escondido A1 Inc.*, 2024 WL 559241, at *6. Finally, even if the Court were to apply the aiding and abetting law set forth in California Jury Instructions—Criminal 3.01, the Court agrees with Defendant that Plaintiff has not alleged that Defendant had "knowledge of the unlawful purpose of the perpetrator," as required by that instruction. (*See* Doc. 13 at 11 (citing California Jury Instructions—Criminal 3.01).)

Accordingly, Plaintiff has failed to state a claim for "aiding and abetting" a violation of CIPA section 631(a), and the Court **DISMISSES** Plaintiff's claim with leave to amend.

**C.   CIPA Section 632.7 (Second Cause of Action)**

Section 632.7(a) prohibits the interception or recording of communications between two phones:

> Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between *two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone*, shall be punished by a fine …, or by imprisonment in a county jail ….

Cal. Pen Code § 632.7(a) (emphasis added).

Defendant argues that the "unambiguous meaning of the statute is thus that it only applies to communications transmitted between (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone." (Doc. 11-1 at 16–17 (quotations marks and citation omitted).) Defendant then contends that "Plaintiff's allegations all relate to text-based web communications regarding a chat feature on a website, which by definition cannot involve two telephones." (*Id.* at 17.) Defendant concludes that "Plaintiff's Section 632.7 claim fails as a matter of law." (*Id.*)

Plaintiff, on the other hand, proffers several theories as to why the statute should be expanded to cover the types of communications at issue here. First, Plaintiff argues that only one of the parties needs to be using a telephone. (Doc. 12 at 28.) Second, Plaintiff argues that the Court should broadly construe the term "landline telephone" to include Defendant's computer equipment. (*Id.* at 28–29.) Third, Plaintiff argues that the term "communication" includes the cellular transmission of computer data. (*Id.* at 29–30.) Fourth, Plaintiff argues that "it is generally understood that [t]he Internet works … through telephone lines." (*Id.* at 30 (quotation marks and citations omitted).) Fifth, Plaintiff argues that CIPA section 632.7 should be read to establish broad privacy protections. (*Id.* at 31.) And finally, Plaintiff argues that Defendant's reliance on case law is misplaced. (*Id.* at 31–34.) The Court finds that Plaintiff's arguments are without merit. Indeed, California district courts have already addressed this issue with near unanimity.

3:23-cv-00598-RBM-JLB

The overwhelming majority of district courts addressing this issue have held that section 632.7(a) applies only to communications between two telephones and not to the internet chat communications at issue here, even when the plaintiff accessed the internet via his or her smartphone.  *See Ring LLC*, 2024 WL 735667, at *7 ("The fact that she used a smart phone to access the internet does not fit within Section 632.7's statutory reach."); *Gen Digital Inc.*, 2024 WL 655986, at *4 ("[S]mart phones do not fall within the scope of the five categories of Section 632.7."); *Nationwide Mut. Ins. Co.*, 2023 WL 5266033 at *9–10 ("[R]eading [section 632.7] so broadly as to encompass web-based messages sent from the internet browser of a smart phone to another party not using a phone at all would completely divorce [the statute] from its clear limits.  The Court need not decide the exact contours of what text-based communications Section 632.7 covers; the statute is limited to communications between two phones, and the allegations here do not fit that category."); *Vitacost.com, Inc.*, 2023 WL 5086893, at *5 ("Plaintiff's use of his smartphone—not to make a phone call, but rather to engage the chat feature of Defendant's website—… places Plaintiff's own device outside the scope of a 'cellular radio telephone.'"); *Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *6 ("[Section] 632.7 unambiguously limits its reach to communications between various types of telephones."); *Licea*, 659 F. Supp. 3d at 1112 ("The Court determines that section 632.7 only applies to the five types of calls enumerated …."); *Hot Topic, Inc.*, 656 F. Supp. 3d at 1069  ("The unambiguous meaning of the statute is thus that it only applies to communications involving two telephones.  Plaintiff's allegations all relate to text-based web communications regarding a chat feature on a website, which virtually by definition cannot involve two telephones."); *D'Angelo*, 2023 WL 7006793 at *10 ("[S]martphones are not covered by Section 632.7."); *Garcia v. Build.com, Inc.*, Case No. 22-cv-01985-DMS-KSC, 2023 WL 4535531, at *6 (S.D. Cal. July 13, 2023) ("A plain reading of the text makes clear that the statute only applies to communications transmitted by telephone, not internet.  Plaintiff seems to argue that Defendant's conduct violated Section 632.7 because Plaintiff's communications with Defendant through the website chat function on her smart phone amounted to

29

'communication ... transmitted via telephony.'  This stretches the statutory language too far."); *Martin*, 2023 WL 2717636, at *17 ("[T]he Court concludes that § 632.7 only applies to the five types of calls previously enumerated."); *but see Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 947 (C.D. Cal. 2023) (finding that only one party need be using a telephone to bring it in the purview of section 632.7 and that smartphones fall within the cellular phone category); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027–28 (C.D. Cal. 2023) (same).

The Court is persuaded by the reasoning of the overwhelming majority of California district courts, which have held that CIPA section 632.7 does not encompass web-based messages sent from the internet browser of a smart phone.  Therefore, the Court declines to adopt Plaintiff's interpretation of the statute.

The only two cases extending the meaning of the statute to the present circumstances, both written by the same judge, found that only one party needs to be using a telephone to bring a communication within the purview of section 632.7.  *See Old Navy, LLC*, 669 F. Supp. 3d at 947; *Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d at 1027–28.  However, this finding is based on dicta in the California Supreme Court's decision in *Flanagan*, which addressed the meaning of "confidential communication," not at issue here.  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–76 (2002).  Further, the district court's finding that smartphones fall within the cellular phone category is also unsupported.  *See Old Navy, LLC*, 669 F. Supp. 3d at 947; *Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d at 1027–28.  As stated above, smartphones "are, in reality, small computers."  *Mastel*, 549 F. Supp. 3d at 1135.  Thus, even if only one phone need be involved, CIPA section 632.7 still does not apply to the present case.

It is not apparent whether Plaintiff seeks direct or "aiding and abetting" liability against Defendant; however, as there is no underlying violation of section 632.7 by

LivePerson, Defendant cannot be liable for aiding and abetting such a violation. *See Vitacost.com, Inc.*, 2023 WL 5086893, at *5.[11, 12, 13]

# IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. As stated above, Plaintiff's claims against Defendant for direct liability under CIPA section 631(a) are **DISMISSED WITH PREJUDICE**. However, Plaintiff's claims against Defendant for "aiding and abetting" under clause four of CIPA section 631(a) are **DISMISSED WITHOUT PREJUDICE**. Likewise, Plaintiff's claim against Defendant for liability under CIPA section 632.7 is **DISMISSED WITHOUT PREJUDICE**. Should Plaintiff decide to amend her claims, Plaintiff must file an amended complaint **on or before April 5, 2024**.

**IT IS SO ORDERED**.

DATE:  March 15, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff argues that Defendant applies a heightened pleading standard by arguing that Plaintiff's FAC lacks details about "the day or time she visited Defendant's website or the contents of her conversation." (Doc. 12 at 34.) The Court disagrees. Defendant's summary of Plaintiff's allegations in the introduction to its Motion (*see* Doc. 11-1 at 7) is not an improper attempt to apply a heightened pleading standard.

[12] Plaintiff argues that "Defendant mistakenly implies that either 631(a) or section 632.7 requires the communication of personal information in order to be actionable …." (Doc. 12 at 35.) However, Plaintiff does not point to any language in Defendant's Motion containing this implication, and the Court is not under this mistaken impression.

[13] Plaintiff argues that the Court should reject Defendant's "smear attack" against Plaintiff for being a "serial litigant" or "tester." (*See* Doc. 12 at 36–37.) However, Defendant's argumentative introduction to its Motion is hardly a "smear attack" against Plaintiff. (*See* Doc. 11-1 at 6.) Further, the Court has not relied on the fact that Plaintiff's counsel has filed similar lawsuits in rendering its decision.