UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ,<br><br>                             Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY, a Delaware Corporation d/b/a www.ford.com,<br><br>                            Defendant. | Case No.: 3:23-cv-00598-RBM-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[Doc. 23]** |

      On April 16, 2023, Plaintiff Rebeka Rodriguez ("Plaintiff"), individually and on behalf of all others similarly situated, filed a First Amended Class Action Complaint ("FAC") for violations of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 630 *et. seq.*, against Defendant Ford Motor Company ("Defendant"). (Doc. 6.)  In her FAC, Plaintiff alleged two causes of action for violations of CIPA sections 631(a) and 632.7.  (*Id.* at 7–11.)

      In its March 21, 2024 Order granting Defendant's motion to dismiss Plaintiff's FAC ("March 21, 2024 Order"), the Court dismissed Plaintiff's claims against Defendant for direct liability under CIPA section 631(a) with prejudice (*see* Doc. 21 at 10, 31) but dismissed Plaintiff's claims against Defendant for "aiding and abetting" under clause four of CIPA section 631(a) without prejudice (*see id.* at 11–27, 31).  The Court also dismissed

1

Plaintiff's claim against Defendant for liability under CIPA section 632.7 without prejudice. (*See id.* at 27–31.)

On April 5, 2024, Plaintiff filed a Second Amended Class Action Complaint for Violation of CIPA ("SAC"). (Doc. 22.) In her SAC, Plaintiff alleges one cause of action for violations of CIPA section 631(a). (*Id.* at 10–12.)

On April 19, 2024, Defendant filed a Motion to Dismiss Plaintiff's SAC ("Motion"). (Doc. 23.) On May 13, 2024, Plaintiff filed a Response in Opposition to Defendant's Motion ("Opposition"). (Doc. 24.) On May 20, 2024, Defendant filed a Reply in Support of its Motion ("Reply"). (Doc. 25.)

The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

In early 2023, Plaintiff visited Defendant's website, www.ford.com (the "Website"), using a smart phone—"a cellular telephone with integrated computers to enable web browsing"—and had a brief conversation with a customer service representative using the chat feature on the Website. (SAC ¶¶ 4, 31.) "Plaintiff was not advised that the chat was monitored, intercepted, or recorded." (*Id.* ¶¶ 4, 32–33.)

Unbeknownst to Plaintiff, Defendant enables and allows LivePerson, Inc. ("LivePerson"), an independent third party, to eavesdrop upon and record all such conversations and then "secretly intercept, exploit, and monetize the chat conversations …." (*Id.* ¶¶ 9, 11.) "LivePerson's chat service is an Application Programming Interface that is 'plugged into' Defendant's Website. The chat function runs from the LivePerson's servers … . … LivePerson runs the Chat service from its own servers, but customers interact with the chat service on Defendant's Website …." (*Id.* ¶ 12.) "Whenever a chat

---

[1] The Court's summary of Plaintiff's allegations reflects Plaintiff's factual and legal allegations in her FAC, not conclusions of fact or law by this Court.

message is sent … to Defendant, it is first routed through LivePerson's server.  This enables LivePerson to analyze and collect customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services." (*Id.* ¶ 13.)

"LivePerson's product is a type of automatic routing software that automatically acquires and transmits user chat communications to LivePerson without any active input from either Defendant's employees, agents, or human representatives.  LivePerson acquires Website visitors' chat communications by first having its software route them to LivePerson's own computer servers that it owns, controls, and maintains.  The secret code enables and allows LivePerson to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they think they are having with Defendant only." (*Id.* ¶ 14.)

"LivePerson has the capability of using the recorded Website chat interactions between Defendant and visitors to the Website for one or more purposes other than to benefit Defendant, a party to such communications."  (*Id.* ¶ 16.)  "LivePerson's chat software is 'integrated' with subsidiaries or divisions of Meta Platforms, Inc. (doing business as 'Meta') like Facebook and WhatsApp." (*Id.* ¶ 17.)  "This integration allows LivePerson to share data with Meta and its subsidiaries, and thus operate as a unified system." (*Id.* ¶ 18.)

"First, Meta identifies 'user interests' by monitoring a collection of 'offsite' user activity, such as the private chat communications between Defendant and visitors to its Website by 'integrating' with LivePerson's software.  Second, Meta generates revenue by selling advertising space through its subsidiaries' ability to identify those offsite user interests.  Third and finally, after harvesting the chat transcripts for valuable data, Meta's brands like Facebook and WhatsApp bombard the unsuspecting Website visitors with targeted advertising." (*Id.* ¶ 19.)

"[A]ll of the schemers – Defendant, LivePerson, and Meta – all profit from secretly exploiting the private chat data through targeted social media advertising because '[t]argeted advertising allows brands to send different messaging to different consumers

3

based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand. Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests.'" (*Id.* ¶ 20.)

"LivePerson's chat transcripts are automatically created and stored by LivePerson for 'data harvesting' purposes, which is the process of extracting personal data for business and marketing purposes." (*Id.* ¶ 21.) "Indeed, LivePerson has acknowledged on page 15 of its Form-10K filing with the U.S. Securities and Exchange Commission for the fiscal year ended December 31, 2017 ('2017 Form-10K'), that 'some states in the United States have enacted legislation designed to protect consumer privacy by prohibiting the distribution of 'spyware' over the Internet …. If … the scope of the previously mentioned 'spyware' legislation were changed to include web analytics, such legislation could apply to the technology we use and potentially restrict our ability to conduct our business.'" (*Id.* ¶ 22.) "Page 1 of its 2017 Form 10-K states in relevant part, '[a]ccording to our internal measures, during 2017, we monitored an average of 2.6 billion visitor sessions per month across our customers' websites. LivePerson combines this session data with conversational transcripts and other historical, behavioral, and operational information to develop insights into consumer intent and each step of the customer journey, which leads to optimized campaign outcomes for sales and service transactions.'" (*Id.* ¶ 23.)

"The homepage of LivePerson's website markets LivePerson's services by stating: '[a]nalyze omnichannel conversation data to uncover the wants and needs of your customers. Identify top customer intents and uncover opportunities to continuously improve the customer journey.' The homepage of LivePerson's website contains a hyperlink named 'Learn more about Conversational Intelligence,' which takes the user to a landing page addressing LivePerson's 'Conversational Intelligence' suite of software." (*Id.* ¶ 24 (citation omitted).) "LivePerson's webpage devoted to the subject of 'Conversational Intelligence,' states in relevant part, '[b]uilt on one of the world's most

extensive customer datasets, our Conversational Intelligence suite turns your customers' words into actionable data—and dollar signs for your business.'" (*Id.* ¶ 25.)

"LivePerson freely acknowledges that it is a 'software-as-a-service (SaaS) provider,' as acknowledged on page 1 of its 2017 Form-10K, which means that LivePerson provides services to companies, not just products." (*Id.* ¶ 27.) "LivePerson does more than merely provide a storage function for Website users' chat communications with Defendant. … Instead, LivePerson uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers—indeed, that is why Defendant pays LivePerson for its software." (*Id.* ¶ 28.)

"Given the nature of Defendant's business, visitors may share personal and confidential data and personally identifying information with Defendant via the Website chat feature." (*Id.* ¶ 30.)

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.     DISCUSSION

**A.     Judicial Notice**

    **1.     Defendant's Request for Judicial Notice**

Defendant requests the Court take judicial notice of LivePerson's web page at https://knowledge.liveperson.com/messaging-channels-facebook.html/, which is referenced in paragraph 17 of Plaintiff's SAC. (Doc. 23-1 at 2.) "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Here, Plaintiff references this specific web page in paragraph 17 of the SAC and references other pages from LivePerson's website in paragraphs 21, 22, 24, and 25. Therefore, the Court finds that LivePerson's website is referenced extensively throughout Plaintiff's SAC and **GRANTS** Defendant's request.

    **2.     Plaintiff's Request for Judicial Notice**

Plaintiff requests that the Court take judicial notice of (1) a Minute Order filed on August 11, 2023 in *Licea v. Jockey Int'l, Inc.*, No. 23STCV02906 (Cal. Super. Ct., Los Angeles County Aug. 11, 2023); (2) the Complaint filed on August 24, 2022 in *People v. Sephora USA, Inc.*, No. CGC-22-601380 (Cal. Super. Ct. S.F. Cty. filed Aug. 24, 2022); and (3) the Final Judgment and Permanent Injunction filed on August 24, 2022 in *People*

*v. Sephora USA, Inc.*, No. CGC-22-601380 (Cal. Super. Ct. S.F. Cty. Aug. 24, 2022). (Doc. 24-1 at 2.) Plaintiff argues that "[f]ederal courts have considered rulings of the California trial courts in ascertaining California law." (*Id.* at 2–3.)

As set forth in this Court's March 21, 2024 Order, Federal Rule of Evidence 201 "governs judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). "It is inappropriate to request that the Court take judicial notice of legal authority, as judicial notice is reserved for adjudicative facts only." *Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal. Aug. 15, 2013) (quotation marks, brackets, and citations omitted); *see also Kilgroe v. APL Marine Servs., Ltd*, No. CV 05-7314 AHM (SSX), 2006 WL 8446867, at *3 (C.D. Cal. Sept. 26, 2006) (finding that a case opinion is not an adjudicative fact). Such a request is unnecessary because "[t]he law is the law regardless of whether the Court takes judicial notice of it." *Harner v. USAA Gen. Indem. Co.*, No. 18cv01993-LL-MDD, 2022 WL 1271136, at *3 (S.D. Cal. Apr. 28, 2022).

Accordingly, the Court **DENIES** Plaintiff's request for judicial notice. The Court is familiar with the law relevant to the present case and will apply it as appropriate.

**B.     CIPA Section 631(a) (First Cause of Action)**

California Penal Code section 631(a) states, "any person…

> [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;

[3] or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

[4] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,

is punishable by a fine… ."

"The California Supreme Court has explained that this lengthy provision contains three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping,' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' [i.e., eavesdropping,] and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978)).  In addition, "Section 631(a) … contains a fourth basis for liability, for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a).)

Having already dismissed any claim against Defendant for direct liability under the first three clauses of CIPA section 631(a) with prejudice (*see* Doc. 21 at 10; Doc. 23 at 7–8), the Court assumes Plaintiff intends to pursue a claim against Defendant under the fourth basis for liability.  "To state a claim under this clause, Plaintiff must allege [LivePerson] has violated one of the first three clauses of section 631(a), and that Defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts." *Esparza v. UAG Escondido A1 Inc.*, Case No. 23-cv-0102 DMS(KSC), 2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024).

Defendant argues that Plaintiff's aiding and abetting claim under the fourth clause fails because (1) it did not aid or abet "wiretapping" under section 631(a)'s first clause, (2) it did not aid or abet "eavesdropping" under section 631(a)'s second clause, (3) it is not liable for aiding and abetting violations of section 631(a)'s third clause, and (4) Plaintiff

fails to allege the requisite knowledge for aiding and abetting. (Doc. 23 at 8–15.) The Court addresses each of Defendant's argument below.

### 1. Clause One—Intentional Wiretapping

As stated above, the first clause of section 631(a) provides that it is punishable by fine or imprisonment for "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, *with any telegraph or telephone wire, line, cable, or instrument*, including the wire, line, cable, or instrument of any internal telephonic communication system … ." Cal. Penal Code § 631(a) (emphasis added). As the Court explained in its March 21, 2024 Order, "clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet." (Doc. 21 at 14 (internal quotation marks and citation omitted); *see also* Doc. 23 at 9.) The Court then held that "Plaintiff cannot circumvent the fact that clause one does not apply to the internet by using the internet function of a smart phone to access Defendant's Website." (Doc. 21 at 14 (citation omitted).) Notwithstanding the Court's ruling, Plaintiff still alleges that she accessed Defendant's Website using the internet function of a smart phone (*see* SAC ¶¶ 4, 31). Therefore, any claim for aiding and abetting wiretapping under clause one must be **<u>DISMISSED WITH PREJUDICE</u>** as clause one does not apply to the internet function of a smartphone, Plaintiff has already had one opportunity to amend her pleading, and amendment would be futile. *See Cook, Perkiss & Liehe*, 911 F.2d at 247.

### 2. Clause Two—Eavesdropping[2]

The second clause of section 631(a) provides that it is punishable by fine or imprisonment for "any person … who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the

---

[2] In this Section, the Court re-states the legal conclusions from its March 21, 2024 Order for clarity.

contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Cal. Penal Code § 631(a).  However, a party to a communication cannot "eavesdrop" on its own communications.  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("[CIPA] contain[s] an exemption from liability for a person who is a 'party' to the communication…."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898–99 (1975) ("[O]nly a third party can listen secretly to a private conversation."); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").  Thus, the question here is whether LivePerson is subject to the "party exemption," which "must be considered in the technical context of this case." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607.

"Two seminal cases frame the recent jurisprudence on section 631: *Ribas v. Clark*, 38 Cal. 3d 355 (1985) ["*Ribas*"] and *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975) ["*Rogers*"]." *Heiting v. Taro Pharms. USA, Inc.*, Case No. 2:23-cv-08002-SPG-E, 2023 WL 9319049, at *2 (C.D. Cal. Dec. 26, 2023); *see also Balletto v. Am. Honda Motor Co.*, Case No. 23-cv-01017-JSW, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Yockey v. Salesforce, Inc.*, Case No. 22-cv-09067-JST, 2023 WL 5519323, at *3 (N.D. Cal. Aug. 25, 2023) (same); *Garcia v. Yeti Coolers, LLC*, Case No. 2:23-cv-02643-RGK-RAO, 2023 WL 5736006, at *2 (C.D. Cal. Sept. 5, 2023) (same).

In *Rogers*, "[Rogers] sought damages [under section 631] from the City of San Jose and from Robert Ulrich because Ulrich, a city employee, had tape recorded, and allowed other persons to hear, portions of a telephone conversation between Rogers and Ulrich." 52 Cal. App. at 894.  The Court found that "Penal Code section 630 … speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included."  *Id.* at 898–99.  The Court reasoned that "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."  *Id.* at 899.

     Ten years later, in *Ribas*, a wife telephoned her husband, the plaintiff; there were amid a divorce. *Ribas*, 38 Cal. 3d at 358. The wife asked her friend, the defendant, to listen in on the conversation. *Id.* "[The] plaintiff subsequently filed [an] action against [the defendant] seeking damages for violations of criminal statutes prohibiting various forms of eavesdropping (Pen. Code, §§ 631, subd. (a), and 637)[.]" *Id.* The *Ribas* court held that "a textual analysis of section 631, the declaration of legislative intent accompanying its enactment, and the various judicial and scholarly authorities addressing the issue leave us no doubt that one of the Privacy Act's objectives was to curb the type of conduct alleged here." *Id.* at 361. The *Ribas* court reasoned that "[s]ection 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Id.* at 359.

     "In the wake of these decisions, courts are asked to determine whether a third party who intercepts a communication is 'more akin to the tape recorder in *Rogers*...or the [wife's] friend [i.e., the defendant] in *Ribas*.'" *Heiting*, 2023 WL 9319049, at *3 (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023)) (citing *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021)). "Despite widespread agreement among courts in [the Ninth Circuit] as to the nature of [this] inquiry, courts have split on how the party exception applies in the context of third-party software, as well as how stringently pleading standards should be applied." *Id.* at *4; *see also Javier*, 649 F. Supp. 3d at 898 ("[Plaintiff's] counsel has brought many similar cases in this Circuit, with two general avenues of decision."); *UAG Escondido A1 Inc.*, 2024 WL 559241, at *4 ("District courts in California are split on whether this exemption extends to third parties, particularly, third party software providers.").

     "The [first] set of cases, led by … *Graham v. Noom*, holds that software vendors like ActiveProspect are 'extension[s]' of the websites that employ them, and thus not third parties within the meaning of the statute." *Javier*, 649 F. Supp. 3d at 899 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) ("*Graham*")). The *Graham* court determined that the software company was "a vendor that provides a software service that

captures its clients' data, hosts it on [the software company's] servers, and allows the clients to analyze their data." *Graham*, 533 F. Supp. 3d at 832. The court held that the software company, as a service provider, was an extension of the website and not a third-party eavesdropper because it merely stored but did not otherwise use or resell visitors' data. *Id.* at 832–33. In other words, the court found that the software was merely a tool that allowed the website to record and analyze its own data, akin to the tape recorder in *Rogers*. *Id.* at 832.

Numerous district courts have applied the reasoning set forth in *Graham*, which hinges on the use (or lack thereof) of the data by the software provider as opposed to the website owner. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("[the] [p]laintiff must provide facts suggesting that [the software companies] are recording [the] [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [the] [d]efendant."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066–68 (C.D. Cal. 2023) ("As in *Graham* … Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper.'"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023) ("Plaintiffs fail to plead that the unnamed third party acted sufficiently independent from Defendant as to constitute an unannounced auditor under California law.").

"The [second] set of cases holds that software providers … are third parties within the meaning of Section 631 …." *Javier*, 649 F. Supp. 3d at 899. They have found two problems with the reading of section 631(a) in *Graham*. *Id.* at 900. "The first is that it interprets the second clause of the statute—'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit'—based on the intentions and usage of the prospective third party." *Id.* (quoting Cal. Penal Code § 631(a)). "But the third clause of the statute already penalizes 'use'—

1  'us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in
2  any way, any information so obtained.'" *Id.* (quoting same). "Thus, reading a use
3  requirement into the second clause would add requirements that are not present (and
4  swallow the third clause in the process)." *Id.*; *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d
5  503, 520 (C.D. Cal. 2021) ("Defendants' argument would imply that any third party who
6  surreptitiously recorded a conversation between two parties would not violate § 631(a) so
7  long as it was recording the conversation at the direction and for the benefit of a party. The
8  text of section 631(a), however, does not contain any such exception … ."); *D'Angelo v.
9  Penny OpCo, LLC*, Case No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *7 (S.D. Cal.
10 Oct. 24, 2023) ("A use requirement is more appropriate in a Clause Three, not Clause Two,
11 analysis."); *Valenzuela v. Super Bright LEDs Inc.*, Case No. ED CV-2301148 JAK (SPx),
12 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023) ("Importing a 'use' element into the
13 second prong would also leave the second prong superfluous.").

14     "The second problem with this view is that it was not the California Supreme Court's
15 stated rationale in *Ribas*[.]" *Javier*, 649 F. Supp. 3d at 900. "The *Ribas* Court did not
16 consider the wife's friend's intentions or the use to which they put the information [he]
17 obtained.  Instead, it emphasized the privacy concerns at issue with having an
18 'unannounced second auditor' listening in on the call, when [s]section 631 concerns 'the
19 right to control the nature and extent of the firsthand dissemination of [their] statements.'"
20 *Javier*, 649 F. Supp. 3d 891 at 900 (citing *Ribas*, 38 Cal. 3d at 360–61); *see also Super
21 Bright LEDs Inc.*, 2023 WL 8424472, at *7 ("*Javier* is also correct that *Ribas* … did not
22 rely on the listener's intentions or state of mind in determining whether the listener was a
23 third party to the conversation."); *Yockey*, 2023 WL 5519323, at *5 ("The Court agrees
24 with the *Javier* court that *Graham* and its progeny are based on a misinterpretation of …
25 *Ribas* … which compel[s] the conclusion that the third party's intentions with respect to
26 the use of the collected information are irrelevant.").

27     However, the *Javier* court added that "[t]here are only two other grounds upon which
28 to conclude that [the software company] is not an 'unannounced second auditor' of the

interaction between [the plaintiff] and [the website]: (1) If [the software company] does not have the *capability* to use its record of the interaction for any other purpose …; or (2) the ubiquity of services like [the software company] on the internet effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the website]."[3] *Id.* (citing same) (emphasis added); *see also Hazel v. Prudential Fin., Inc.*, Case No. 22-cv-07465-CRB, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) ("[T]he concern is not on whose behalf the recording is undertaken, but whether the recorder is *capable* of using the recording for other ends.") (emphasis added); *Yockey*, 2023 WL 5519323, at *5 ("[T]he inquiry turns on…whether the third party has the *capability* to use its record of the interaction for any other purpose.") (quotation marks and citation omitted) (emphasis added); *Swarts v. Home Depot, Inc.*, No. 23-cv-0995-JST, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) ("[T]his distinction turns on the question of whether the third party has the *capability* to use its record of the interaction for any other purpose.") (quotation marks and citations omitted) (emphasis added).

The Court has also identified a third line of cases finding that whether a particular software is akin to the tape recorder in *Rogers* or the eavesdropper in *Ribas* is a question of fact to be decided after discovery into the technical context of the case. *See e.g., Kauffman v. Papa John's Int'l, Inc.*, Case No. 22-cv-1492-L-MSB, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether [the software provider] acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the … technical context of the case.") (citation omitted); *Yoon*, 549 F. Supp. 3d at 1081 ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder … or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of [the software]."); *Yeti Coolers, LLC*, 2023 WL 5736006, at *4 ("But the

---

[3] Because subsequent district courts and the parties have not addressed the "ubiquity of services" ground, the Court will not address it here.

question of whether [the software] is more similar to a tape recorder or an eavesdropper is a question of fact best resolved by a jury."); *Gutierrez v. Converse Inc.*, Case No. 2:23-cv-06547-RGK-MAR, 2023 WL 8939221, at *3 (C.D. Cal. Oct. 27, 2023) ("[W]hether a party is acting like a third-party eavesdropper or merely providing a tool is generally a question of fact.").

After careful consideration, the Court finds the reasoning in *Javier* is persuasive. The Court agrees that importing a "use" requirement into clause two would render clause three superfluous. The Court also agrees that the California Supreme Court in *Ribas* did not instruct subsequent courts to consider the intentions of the third-party eavesdroppers when making their decisions. Thus, applying *Javier*, the question before the Court is whether Plaintiff has adequately alleged that LivePerson has the "capability" to use the chat data for its own purposes or benefit. *See Balletto*, 2023 WL 7026931 at *2 ("The Court finds [*Javier's*] reasoning persuasive and asks whether [the plaintiff] has alleged [the software company] has the capability to use the information it gained for any other purpose."); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *6 ("Even courts that accepted *Javier* have rejected the argument that software without the capability simultaneously to disseminate customer data can be a form of eavesdropping.").

Here, the Court finds that Plaintiff has adequately alleged that LivePerson has the "capability" of using the chat data for its own purposes or benefit. For example, Plaintiff alleges LivePerson is a SaaS provider, meaning LivePerson provides services to its customers, not just software. (SAC ¶ 27.) Plaintiff therefore concludes that LivePerson does more than store Plaintiff's chat communications with Defendant. (*Id.* ¶ 28.) Plaintiff also alleges that LivePerson "monitor[s] an average of 2.6 billion visitor sessions per month across [its] customers' websites" and that "LivePerson combines this session data with conversational transcripts and other historical, behavioral, and operational information …." (*Id.* ¶ 23.) Plaintiff then alleges that LivePerson's Conversational Intelligence is "[b]uilt on one of the world's most extensive customer datasets[.]" (*Id.* ¶ 25.) "[A]ccept[ing] [Plaintiff's] factual allegations in the complaint as true and constru[ing] the pleadings in

the light most favorable to the nonmoving party[,]" *Manzarek*, 519 F.3d at 1031, Plaintiff appears to allege that LivePerson combines data from each of its customers into one, extensive customer dataset, which it utilizes for all of its clients. Thus, Plaintiff has adequately alleged that LivePerson has the "capability" of using the data it collects for its own purposes and benefit, e.g. servicing its other clients. *See e.g., UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 ("Plaintiff has alleged sufficient facts to withstand Defendant's motion to dismiss based on the party exemption."); *Licea v. Vitacost.com, Inc.*, Case No. 22-cv-1854-RSH-WVG, 2023 WL 5086893, at *4 (S.D. Cal. July 24, 2023) (agreeing with "decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).").

### 3.  Clause Three—Use

A finding of a violation under clause three is contingent upon a finding of a violation of either clause one or two. *See Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023) ("A finding of a violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or second clause of § 631(a).") (citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue ... was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.")). As stated, above, the Court finds that Plaintiff has adequately alleged that LivePerson has the "capability" to use, and has used, the chat data for its own purposes or benefit, such as servicing its other clients, in violation of clause two. (*See* Section III.B.2.) Thus, Plaintiff has also sufficiently alleged that LivePerson has violated clause three. *Id.*

### 4.  Clause Four—Knowledge and Intent

Section 631(a), clause four, imposes liability on any person "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in clauses one through three. Cal. Penal Code

§ 631(a). As the Court previously held (*see* Doc. 21 at 26–27), "a person may be held liable as an aider and abettor if they: (a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (quotation marks and citations omitted); *see also Heiting*, 2023 WL 9319049, at *6 (finding that the complaint did not allege facts demonstrating the defendant acted with the requisite knowledge or intent to aid and abet).

Defendant argues that "Plaintiff's SAC fails to allege that Defendant knew that LivePerson's conduct constituted a breach of some duty" and that "Plaintiff's allegations that Defendant has knowledge that LivePerson, through software, captures the electronic communications of visitors to Defendant's Website, and pays LivePerson to conduct these activities, are not enough to support a claim for aiding and abetting." (Doc. 23 at 15.) Plaintiff responds that she has plausibly plead Defendant's knowledge and intent.[4] (Doc. 24 at 28–33.)

Here, Plaintiff asserts facts to support the substantial assistance prong of a common law aiding and abetting claim by alleging that Defendant plugged LivePerson's Application Programming Interface into its Website. (*See* SAC ¶ 12.) Plaintiff then alleges facts suggesting that Defendant knew its use of LivePerson's SaaS could constitute a breach of some duty. Plaintiff alleges that LivePerson "monitor[s] an average of 2.6 billion visitor

---

[4] Plaintiff also argues that the fourth clause of Section 631(a) does not impose a knowledge or intent requirement. (Doc. 24 at 21–28.) In support of this argument, Plaintiff cites *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023) ("*Cousin*") and numerous inapplicable criminal cases. However, the Court already identified the appropriate aiding and abetting standard in its March 21, 2024 Order. (*See* Doc. 21 at 25–27.) Even if the Court were to re-consider its prior decision, the Court does not find Plaintiff's reliance on *Cousin* persuasive, as the district court in *Cousin* did not cite any authority when declining to analyze "aids, agrees with, employs, or conspires with" as "aiding and abetting." *See Cousin*, 681 F. Supp. at 1130.

sessions per month across [its] customers' websites[;]" that "LivePerson combines this session data with conversational transcripts and other historical, behavioral, and operational information[;]" that LivePerson builds "one of the world's most extensive customer datasets[;]" and that LivePerson warns that "some states in the United States have enacted legislation designed to protect consumer privacy by prohibiting the distribution of 'spyware' over the Internet. … If … the scope of the previously mentioned 'spyware' legislation were changed to include web analytics, such legislation could apply to the technology we use and potentially restrict our ability to conduct our business.'" (*Id.* ¶¶ 22–23, 25.) Therefore, "accept[ing] [Plaintiff's] factual allegations in the complaint as true and constru[ing] the pleadings in the light most favorable to the nonmoving party[,]" *Manzarek*, 519 F.3d at 1031, the Court finds that Plaintiff has plausibly alleged that Defendant was made aware of LivePerson's data use and the risk of prohibiting legislation and therefore knew LivePerson's conduct constituted a breach of some duty. Plaintiff has stated a claim for "aiding and abetting" a violation of CIPA section 631(a).

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion. The Court **DISMISSES WITH PREJUDICE** any claim brought under clause one of the CIPA section 631(a). However, Plaintiff's remaining claims may proceed. Defendant must answer or otherwise respond to Plaintiff's SAC on or before **December 17, 2024**.

   **IT IS SO ORDERED**.

DATE:  December 3, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE